No. 10-5078

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MARY BROOKE OBERWETTER,

Plaintiff-Appellant,

v.

KENNETH HILLIARD, ET AL.,

Defendants-Appellees.

Appeal from a Judgment of the
United States District Court for the District of Columbia
The Hon. John D. Bates, District Judge
(Dist. Ct. No. 09-CV-0588-JDB

APPELLANT'S BRIEF

Alan Gura
Candice N. Hance
GURA & POSSESSKY, PLLC
101 N. Columbus Street
Suite 405
Alexandria, VA 22314
703.835.9085/703.997.7665

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

A. *Parties and Amici*

The parties in the district court were plaintiff Mary Brooke Oberwetter; and defendants Kenneth Hilliard, a National Park Service officer, and Kenneth L. Salazar, U.S. Secretary of the Interior.  All parties below are parties before this Court on this appeal. There were no amici below for either party. At present, there are no known amici parties appearing before this Court on this appeal.

B. *Rulings Under Review*

The rulings under review are contained within the district court's Order and Memorandum Opinion, both issued on January 25, 2010 by the Hon. John D. Bates, granting Defendant's Motion to Dismiss. The district court's opinion is published at *Oberwetter* v. *Hilliard*, 680 F. Supp. 2d 152 (D.D.C. 2010). The ruling under review and judgment being appealed are set forth in the Joint Appendix at JA 110-136.

C. *Related Cases*

The case on review has not previously been before this or any other court apart from the original proceeding in the United States District Court. Counsel is not aware of any related cases pending before this or any other court.

# TABLE OF CONTENTS

Certificate of Parties, Rulings Under Review, and Related Cases. . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statutes and Regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    The National Park Service's Demonstration Prohibition Is
      Inapplicable To Oberwetter. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.    Only The National Park Service Regional Director May
            Violate 36 C.F.R. § 7.96. . . . . . . . . . . . . . . . . . . . . . . . . 12

      B.    Oberwetter's Conduct Did Not Fall Within The Park
            Service's Definition Of A Demonstration. . . . . . . . . . . . . 13

II.   Even Were This Regulation Applicable To Oberwetter, She Is
      Exempted As A Member Of A Group Smaller Than 26 People. . 17

III.   Deferring to Defendants' Regulatory Interpretation Is Inappropriate Where That Interpretation Is Unconstitutional..  20

IV.   Defendants' Application Of 36 C.F.R. § 7.96 To Oberwetter Violates Her First Amendment Rights. . . . . . . . . . . . . . . . . . . . 22

    A.   Oberwetter's Expression Occurred In A Traditional Public Forum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    B.   Attempts To Place Oberwetter In A Non-Public Forum Are Misplaced And, Even If Successful, Do Not Constitutionalize Defendants' Misconduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.   Oberwetter's Arrest Violated Her First And Fourth Amendment Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    A.   Hilliard Lacked Probable Cause to Arrest Oberwetter. . . . 28

        i.   Oberwetter Did Not "Interfere With An Agency Function." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

        ii.   Oberwetter Did Not Disobey A Lawful Order.. . . . . . 32

        iii.   Hilliard Arrested Oberwetter In Retaliation For Questioning His Misconduct, In Clear Violation Of The First Amendment.. . . . . . . . . . . . . . . . . . . . . 34

    B.   Hilliard Used Excessive Force To Arrest Oberwetter... . . . 38

    C.   Hilliard Lacks Qualified Immunity, As It Has Long Been Well-Established That Police May Not Arrest Individuals Without Probable Cause, Using Excessive Force, And In Retaliation For Asking Questions. . . . . . . . . . . . . . . . . . . . 42

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

iv

# TABLE OF AUTHORITIES

Cases

*Barham* v. *Ramsey*,
　　434 F.3d 565 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Bivens* v. *Six Unknown Named Agents*,
　　403 U.S. 388 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Boardley* v. *U.S. Dep't of the Interior*, No. 09-5176,
　　2010 U.S. App. LEXIS 16302 (D.C. Cir. Aug. 6, 2010) .. . 17, 24, 27

*Brown* v. *Louisiana*,
　　383 U.S. 131 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*City of Chicago* v. *Morales*,
　　527 U.S. 41 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*City of Houston* v. *Hill*,
　　482 U.S. 451 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37, 43

*Conn. Nat'l Bank* v. *Germain*,
　　503 U.S. 249 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cornelius* v. *NAACP Legal Def. & Ed. Fund, Inc.*,
　　473 U.S. 788 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*District of Columbia* v. *Little*,
　　339 U.S. 1 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 30, 31, 43

*Dole* v. *United Steelworkers of Am.*,
　　494 U.S. 26 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cases upon which we chiefly rely are marked with an asterisk.

v

*Graham* v. *Connor*,
   490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Hague* v. *CIO*,
   307 U.S. 496 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hall St. Assocs., L.L.C.* v. *Mattel, Inc.*,
   552 U.S. 576 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lamb* v. *City of Decatur*,
   947 F. Supp. 1261 (C.D. Ill.1996) . . . . . . . . . . . . . . . . . . . . . . . . 44

*Leatherman* v. *Tarrant County Narcotics & Coordination Unit*,
   507 U.S. 163 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lederman* v. *United States*,
   291 F.3d 36 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lewis* v. *City of New Orleans*,
   415 U.S. 130 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*Michigan* v. *DeFillippo*,
   443 U.S. 31 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Ord* v. *District of Columbia*,
   587 F.3d 1136 (D.C. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pearson* v. *Callahan*,
   129 S. Ct. 808 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

**Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n*,
   460 U.S. 37 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25, 27

*Rogala* v. *District of Columbia*,
   161 F.3d 44 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Saucier* v. *Katz*,
    533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Shuttlesworth* v. *City of Birmingham*,
    382 U.S. 87 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Sparrow* v. *United Air Lines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Bass*,
    82 F.3d 811 (8th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

\*United States* v. *Goldin*,
    311 F.3d 191 (3d Cir. 2002)... . . . . . . . . . . . . . . . . . . . . . . . . . . 32-34

*United States* v. *Sheehan*,
    512 F.3d 621 (D.C. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Wilfong*,
    274 F.3d 1297 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Wardlaw* v. *Pickett*,
    1 F.3d 1297 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 41, 44, 45

*Wasserman* v. *Rodacker*,
    557 F.3d 635 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 39, 41, 42

Constitutional Provisions

U.S. CONST. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

U.S. CONST. art. VI, cl. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

vii

Statutes, Regulations, and Rules

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

36 C.F.R. § 2.32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

36 C.F.R. § 2.32(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 29

36 C.F.R. § 2.32(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 29, 32-34

36 C.F.R. § 7.96(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

36 C.F.R. § 7.96(g)(1)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

36 C.F.R. § 7.96(g)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

36 C.F.R. § 7.96(g)(2)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

36 C.F.R. § 7.96(g)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

36 C.F.R. § 7.96(g)(3)(ii)(C). . . . . . . . . . . . . . . . . . . 6, 9, 12, 17, 18, 26

41 Fed. Reg. 12,879 (Mar. 29, 1976). . . . . . . . . . . . . . . . . . . . . 20, 24

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

Other Authorities

NORMAN J. SINGER, 2A SUTHERLAND ON STATUTORY CONSTRUCTION
    § 45.11 (7th ed. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

NORMAN J. SINGER, 3 SUTHERLAND ON STATUTORY CONSTRUCTION

§ 59:3 (7th ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# APPELLANT'S BRIEF

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant ("Plaintiff") Mary Brooke Oberwetter seeks declaratory and injunctive relief against enforcement of a National Park Service regulation interpreted to prevent expressive dancing in a public forum, in violation of the United States Constitution. Plaintiff also seeks redress under *Bivens* v. *Six Unknown Named Agents*, 403 U.S. 388 (1971), against Appellee-Defendant Kenneth Hilliard for arresting her without probable cause, with excessive force, and out of spiteful retaliation against the exercise of her First Amendment rights.

The district court had subject-matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction under 28 U.S.C. § 1291.  On January 25, 2010, the district court entered an Order granting Defendants-Appellees' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff timely filed a Notice of Appeal on March 23, 2010.

1

## STATEMENT OF ISSUES

1. Does 36 C.F.R. § 7.96 prohibit silent dancing in place at the Jefferson Memorial, and if so, does such application of Section 7.96 violate the First Amendment?

2. Does 36 C.F.R. § 2.32 prohibit remonstration of constitutional rights or criticism of police officers, and if so, do such applications of Section 2.32 violate the First Amendment?

## STATUTES AND REGULATIONS

An addendum contains the following:

36 C.F.R. § 2.32; 36 C.F.R. § 7.96(g)(i), (g)(2)(i), and (g)(3)(ii)(C).

## STATEMENT OF THE CASE

If the First Amendment protects anything, it protects free assembly and free expression in the public fora of streets and parks, particularly where the street or park is located in an area of national significance. Americans are free to creatively celebrate (or condemn) political figures in these places, including the still-controversial President Thomas Jefferson and his memorial. The First Amendment also protects – indisputably – the right to talk back to police officers: to criticize them

2

and to ask them questions about their conduct.[1]

Yet on President Jefferson's 265th birthday, Plaintiff was arrested for the "crime" of expressing herself in just such a fashion. It now appears plain from Defendants' admissions and exhibits that Ms. Oberwetter did not actually violate either of the regulations for which she was cited, even as Defendant Hilliard took a number of days to locate a reason to justify his conduct.

The fact that no law was broken suffices to sustain a *Bivens* judgment for violation of Plaintiff's Fourth Amendment rights, as does the fact that Plaintiff was arrested for engaging in constitutionally protected expressive activity. Regardless of the arrest's legality, the force used by Defendant Hilliard was excessive, another valid Fourth Amendment claim that Plaintiff is entitled to bring before a jury.

And if Hilliard correctly applied the Park Service regulations, those regulations are plainly unconstitutional as they proscribe classic First Amendment expressive conduct.

---

[1] Although Oberwetter was unfailingly polite to Hilliard, the First Amendment would have equally protected her had she been more frank in her assessment of his performance.

3

Plaintiff has been prohibited from pursuing any of these claims, or even from developing an appropriate evidentiary record, by the lower court's granting of the Defendants' motion to dismiss. This Court should reverse.

First Amendment freedoms should be secured from the arbitrary, unconstitutional interpretation and enforcement of Park Service regulations. Americans must be able to visit their national parks secure in the knowledge that they are free from the sanctions of arbitrary threats to their expressive liberties.

The Complaint plainly states legal claims upon which relief can and must be granted.

## STATEMENT OF FACTS

The facts of this appeal are uncomplicated. On April 12, 2008—the eve of Thomas Jefferson's birth—Plaintiff Mary Brooke Oberwetter and seventeen of her friends gathered outside the Jefferson Memorial shortly before midnight to celebrate and honor the former President. JA 12, ¶¶ 12, 14. The group planned to celebrate Thomas Jefferson by ushering in his birthday with silent dance. *Id.* at ¶ 13. Each member of

4

the small group would dance quietly, mostly in place by himself or herself, while listening to his or her own music through headphones.  *Id.*

At approximately five minutes before midnight, the group began their celebration.  *Id.*  Apart from Oberwetter, her associates, and employees of the National Park Service, there were very few visitors to the Jefferson Memorial at the time of the dancing.  *Id.* at ¶ 15. Plaintiff's conduct did not have the effect, intent or propensity to draw a crowd or onlookers not already present.  *Id.*

Shortly after the dancing commenced, Hilliard and several other Park Police officers violently dispersed the dancers, shoving and pushing them out of the Jefferson Memorial.  *Id.* at ¶ 16.  Hilliard approached Oberwetter while she was silently dancing in place, listening to music through earbuds.  JA 13, ¶ 17.  Hilliard pushed Oberwetter, and then left.  *Id.*  Moments later, Hilliard returned to Oberwetter, who was still quietly dancing, and ordered her to leave. *Id.*

Oberwetter asked Hilliard why he was ordering her to leave, and what law she was violating, but Hilliard refused to answer, insisting

5

only that she stop dancing and leave the Jefferson Memorial. *Id.* at
¶ 18. Oberwetter agreed to stop dancing and leave the Jefferson
Memorial if Hilliard would only provide a lawful reason why she
needed to do so, but Hilliard refused to offer any reason for his
demands, and instead arrested Oberwetter. *Id.* at ¶ 19.

Oberwetter was at all times peaceful and did not resist Hilliard or
any other officer in any way. *Id.* at ¶ 20. Hilliard used more force than
was necessary to effect his arrest of Oberwetter, ripping apart her
earbud, shoving her against a pillar, and violently twisting her arm.
*Id.* at ¶ 19. Oberwetter was issued a citation for "Interfering with an
Agency Function" under 36 C.F.R. § 2.32(a)(1), (2), and held for
approximately five hours before being released. *Id.* at ¶¶ 22-23.

Several days after the incident, Park Police officers arrived at
Oberwetter's house and gave her two citations issued by Hilliard: an
apparently superceding citation for "Interfering with an Agency
Function," 36 C.F.R. § 2.32(a)(1), (2), and an additional citation for
"Demonstrating Without a Permit," in violation of "36 C.F.R.
§ 7.963(g)(3)(ii)(c)." JA 13-14, ¶ 24. The charges were abandoned, not

6

having been properly presented to the court.  JA 14, ¶ 25.

On March 27, 2009, Oberwetter filed the present lawsuit in the United States District Court for the District of Columbia, seeking declaratory relief and money damages. She asserted *Bivens* claims against Hilliard for (1) arresting her without probable, and using excessive force, in violation of the Fourth Amendment, and (2) interrupting and preventing her expressive activity and assembly in violation of the First Amendment.  JA 14-15, ¶¶ 28-34.  Oberwetter further sought declaratory relief that expressive activity and assembly of the kind suppressed by Hilliard is protected by the First Amendment, and that 36 C.F.R. §§ 2.32(a)(i)(2) and 7.96 are unconstitutional as applied to her activities if the provisions can be construed to reach that far, which she disputed.  JA 16, ¶¶ 35-36.

On January 25, 2010, the District Court granted the Defendants' motion to dismiss the Complaint. Parsing the regulatory scheme, the court concluded that Hilliard had probable cause to arrest Oberwetter for "Demonstrating Without a Permit," regulatory "opacity" notwithstanding.  JA 119.  The lower court was skeptical of Hilliard's

7

interference argument, JA 132 n.10, but did not reach the question of whether probable cause existed to support an arrest under that provision.

The court further concluded that Oberwetter had failed to state a *Bivens* claim for excessive force. The court did not convert the motion to dismiss into a motion for summary judgment, JA 113 n.1, but nevertheless concluded that the force used by Hilliard was reasonable, and observed that Oberwetter had not specifically pled "that she suffered an injury as a result of her arrest, either from her arm being twisted or from being shoved against a pillar."  JA 134.

The court then proceeded to uphold Hilliard's application of Section 7.96 to Oberwetter's conduct against her First Amendment challenge. This portion of the appeal was not contested in Defendants' motion for summary affirmance, which this Court denied July 20, 2010.

## SUMMARY OF ARGUMENT

As an experienced United States Park Police officer, Hilliard is expected to possess intimate familiarity with the rules governing the public's behavior in areas administered by the National Park Service.

8

Upon arresting Plaintiff-Appellant Mary Brooke Oberwetter, Hilliard

charged her with violating 36 C.F.R. § 2.32, which proscribes

"Interfering with agency functions."

Three days later, correctly sensing that the interference charge could

not stand,[2] Hilliard added an allegation that Oberwetter violated 36

C.F.R. § 7.96(3)(ii)(C), a provision addressing only the conduct of Park

Service officials. Even had the regulation reached Oberwetter, serious

doubt exists to whether it describes her conduct.

The District Court conceded these difficulties at an oral argument on

Hilliard's motion to dismiss lasting over two hours, and in its opinion.

*See* JA 19-29, 99-106; JA 118 ("Oberwetter is correct as a semantic

matter: no provision of section 7.96 explicitly regulates an individual's

conduct"); JA 119 ("[a]lthough the Park Service could have articulated

this position more clearly, opacity does not decide cases").

Ultimately, however, the court accepted Hilliard's novel construction

of Section 7.96. Thus interpreted and applied to Oberwetter, the court

---

[2] JA 132 n.10 ("the Court is less confident that Officer Hilliard properly arrested Oberwetter for interfering with an agency function"); *District of Columbia* v. *Little*, 339 U.S. 1 (1950) (asserting one's constitutional rights is not criminal interference).

9

upheld the regulation's constitutionality as applied to her expressive conduct. And because Oberwetter was, under this view, properly arrested, her false arrest *Bivens* claim was dismissed. The excessive force aspects were not sustained because, the lower court found, the injury alleged was insufficiently severe.

None of these claims can be sustained. The novel Section 7.96 interpretation is atextual, and leads to absurdly overbroad, unconstitutional application. The simple fact, however, is that it does not on its face reach Oberwetter's conduct. As there is no serious dispute surrounding Hilliard's interference claim, a reversal of Hilliard's Section 7.96 theory will establish what is readily obvious from the complaint's factual allegations – that he arrested Plaintiff without probable cause, out of spite, triggering his *Bivens* liability on Plaintiff's first claim for relief.

Likewise, no basis exists for prohibiting Plaintiff's *Bivens* claim of excessive force. Plaintiff has properly stated this claim by pleading that Hilliard "shov[ed] her against a pillar" and "violently twist[ed] her arm" in the course of arresting her. Discovery will further develop the

evidentiary record and permit a trier of fact to properly adjudicate this claim.

Finally, Hilliard is also not entitled to relief with respect to Plaintiff's *Bivens* claim for interrupting and preventing her expressive activity and assembly in violation of the First Amendment. Hilliard argues that he is entitled to qualified immunity, but his argument again relies heavily on his own interpretation of the Park Service regulations on appeal before this Court.

Accordingly, this Court should safeguard Plaintiff's First and Fourth Amendment rights by preventing Defendants' unconstitutional application and interpretation of its regulations and remanding the case to district court.

## ARGUMENT

A lower court's adjudication of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is reviewed de novo on appeal.  *Ord* v. *District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009).  Plaintiff's factual allegations must be presumed true and should be liberally construed in her favor, giving her every favorable inference that may be drawn.  *Leatherman* v.

*Tarrant County Narcotics & Coordination Unit*, 507 U.S. 163, 164

(1993); *Sparrow* v. *United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C.

Cir. 2000).

## I. The National Park Service's Demonstration Prohibition Is Inapplicable To Oberwetter.

Despite the novel interpretation advanced by the Defendants, the

demonstration prohibition within the Jefferson Memorial does not

apply to Ms. Oberwetter, both because the regulation serves to regulate

only the Park Service's issuance of permits and because her expressive

dance does not fall within the regulation's definition of a

demonstration.

### A. Only The National Park Service Regional Director May Violate 36 C.F.R. § 7.96.

The provision relied upon by Defendants to condemn Ms.

Oberwetter's behavior states that "[n]o permits may be issued

authorizing demonstrations or special events in . . . The Jefferson

Memorial," with the exception of a permit issued for *the government's*

official celebration of Jefferson's birthday.  36 C.F.R. § 7.96(g)(3)(ii)(C).

However, Oberwetter has no authority to issue permits for this

12

location, as it is solely within the authority of the National Park Service's Regional Director to do so. *Id.* § 7.96(g)(3). Thus, by its very text, the regulation advanced to criminalize Oberwetter's expression cannot apply to her because it does not apply to any individual's expressive conduct, but only to the Park Service's ability to issue permits for that conduct.

This point was confirmed by the district court. JA 118 ("[N]o provision of section 7.96 explicitly regulates an individual's conduct."). It is not too much to ask that prior to arresting an individual, the government must identify an actual provision of law criminalizing the individual's conduct. Because the provision under which Oberwetter was purportedly arrested cannot apply to her conduct (or any individual's conduct), judicial inquiry as to the validity of Oberwetter's arrest should  end here.

### B.     Oberwetter's Conduct Did Not Fall Within The Park Service's Definition Of A Demonstration.

Despite the complete inapplicability of Section 7.96 to Ms. Oberwetter's speech, Defendants still futilely attempt to shoehorn her expressive dance into the regulation's definition of "demonstration."

13

This argument is also unavailing.  As defined under Park Service

regulations, a "demonstration" includes:

> demonstrations, picketing, speechmaking, marching, holding vigils
> or religious services and all other like forms of conduct which involve
> the communication or expression of views or grievances, engaged in
> by one or more persons, the conduct of which has the effect, intent or
> propensity to draw a crowd or onlookers. This term does not include
> casual park use by visitors or tourists which does not have an intent
> or propensity to attract a crowd or onlookers.

36 C.F.R. § 7.96(g)(1)(i).

Expressive dancing is nowhere expressly mentioned in this

definition, and there is no allegation that Ms. Oberwetter engaged in

any of the listed, proscribed conduct. Moreover, Oberwetter's expressive

dance is not a "like form[] of conduct" with the items expressed in the

regulation's list.[3]  "[D]emonstrations, picketing, speechmaking,

---

[3] In addition to the statute's express prohibition of only conduct
that is "like" that which is enumerated, basic principles of statutory
construction dictate that when construing the language of a provision,
one may only imply the inclusion of items that are sufficiently similar
to those expressed. *See, e.g.*, *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.*, 552
U.S. 576, 586 (2008) ("[Under the rule of ejusdem generis], when a
statute sets out a series of specific items ending with a general term,
that general term is confined to covering subjects comparable to the
specifics it follows"); *Dole* v. *United Steelworkers of Am.*, 494 U.S. 26, 36
(1990) ("The traditional canon of construction, noscitur a sociis, dictates
that 'words grouped in a list should be given related meaning.'")
(citations omitted).

marching, [and] holding vigils or religious services" all involve organized group activity in which a uniform message is passionately conveyed. This is distinct from the individual conduct of Oberwetter and her friends, who neither organized their style and tone of dance nor their specific message. They were united only in a desire to pay their respects to President Jefferson, a desire common to many visitors to the Memorial. Surely this unified desire could not violate the Park Service's regulation, for if it did, the school, church, military, and other tourist groups (many larger than twenty-five people) who visit the Memorial each day would also be in violation.

Indeed, the conduct of Oberwetter and her friends easily falls within the "casual park use" common to the Memorial. Silent, but expressive conduct surrounds us and is not an uncommon occurrence in a public space, particularly not in a national park. Oberwetter's silent movement in place at the Jefferson Memorial is no more out of the ordinary than that of a person silently dancing in place while listening to headphones and waiting at a bus stop or subway station. Such expressive activity does not have the "effect, intent, or propensity to

15

draw a crowd," particularly late at night where few visitors were around and where no attention-grabbing costumes, signs, lights, amplification, or hystrionics were involved.  *See* JA 12, ¶ 15.

The district court incorrectly held that the common link uniting Oberwetter's dancing and the enumerated list of proscribed activities was the fact that they were expressive.  JA 121-22 ("The common thread is that all of the listed activities 'have as their primary purpose the communication or expression of views or grievances.'"). This reasoning negates the regulatory text, which only prohibits "like forms of conduct" that are expressive, activities which are unrelated to expressive dance.

What's more, to accept the district court's logic would be to criminalize expression in toto at the Jefferson Memorial, so long as it had the potential to attract even a sidelong glance from others present. Under this rubric, a person muttering to himself, a couple kissing, or an Amish tourist family in traditional dress would be "demonstrators" because their expressive conduct could pique the interest of fellow visitors who might simply be "people watching."

16

This Court has already held that the National Park Service's attempts to prohibit broad swaths of expressive activity is unconstitutional. *See Boardley* v. *U.S. Dep't of the Interior*, No. 09-5176, 2010 U.S. App. LEXIS 16302, at *1-2 (D.C. Cir. Aug. 6, 2010) (holding that Park Service regulations which "penalize a substantial amount of speech that does not impinge on the government's interests" are overbroad and unconstitutional).

## II.    Even Were This Regulation Applicable To Oberwetter, She Is Exempted As A Member Of A Group Smaller Than 26 People.

Even if Oberwetter's expressive dancing were read into the regulatory definition of a demonstration, she could not be arrested under the regulation because she is specifically exempted as a member of a group smaller than 26 people.  Per 36 C.F.R. § 7.96(g)(2)(i), "demonstrations" of fewer than 26 people may occur without a permit, so long as any other required conditions are met.  As discussed *supra*, the outright prohibition applicable to the Jefferson Memorial relates only to the issuance of permits for expressive activity, not to individual expressive conduct, 36 C.F.R. § 7.96(g)(3)(ii)(C), so the permit

prohibition cannot be a required condition preventing "demonstrations" of fewer than 26 people.  This Court has already evaluated 36 C.F.R. § 7.96(g)(2)(i) and (ii), finding "[p]ermits are not required for some demonstrations involving fewer than 25 people, nor are they required for demonstrations taking place in certain park areas." *United States* v. *Sheehan*, 512 F.3d 621, 628 (D.C. Cir. 2008).  Because Oberwetter's group was no larger than eighteen people, her expressive activity is specifically exempted from the Park Service regulation.

In direct contravention of this Court's precedent, the district court read Oberwetter's conduct as an individual into the regulation—after disclaiming an express regulation of individuals—by applying an incorrect syllogism.  According to the court:

> [S]ection 7.96 allows *groups of more than twenty-five people* to demonstrate only pursuant to a properly issued permit. *See* 36 C.F.R. § 7.96(g)(2).  And section 7.96 prohibits permits for demonstrations at the Jefferson Memorial. *See* 36 C.F.R. § 7.96(g)(3)(ii)(C). If demonstrations must occur with a permit, and permits may not be issued for demonstrations at the Jefferson Memorial, then it follows that *individuals* may not demonstrate at the Jefferson Memorial.

JA 118 (emphasis added).  However, according to this syllogism, it does not follow that *individuals* cannot demonstrate; rather only that *groups*

18

*of more than twenty-five people* cannot.  The court mistakenly substituted "individuals" for the group requirement and incorrectly applied the demonstration regulation to Oberwetter.

Also, the lower court's view that whether a permit may be issued is a condition for the issuance of a permit is circular.  *See* JA 119 ("Whether a permit may be issued at all is a 'condition[] required for the issuance of a permit.'").  Further, the argument that section 7.96(g)(2)(i) "cannot be read as authorizing without restriction demonstrations involving fewer than twenty-six people at the Jefferson Memorial in light of the complete prohibition on demonstrations involving more than twenty-five people at the Memorial," *id.*,  is improper.

Given the Park Service's concern with maintaining an atmosphere of tranquility at the Memorial, it is entirely possible that the drafters of the regulation decided groups larger than twenty-five people would interfere with that tranquility, while smaller groups would not. Indeed, Oberwetter and her seventeen friends were quite tranquil while engaged in their silent, expressive dancing, consistent with the Park Service's desire to maintain "an atmosphere of calm, tranquility,

19

and reverence."  41 Fed. Reg. 12,879, 12,880 (Mar. 29, 1976).

The lower court's attempt to salvage a regulation it acknowledges is riddled with "opacity" is inappropriate.  *See* JA 119 ("Although the Park Service could have articulated this position more clearly, opacity does not decide cases.").  That the Park Service did not more clearly articulate their preferred interpretation of this regulation is not for the courts to do in their stead; rather, the court should read the face of the statute and apply it as written.  The interpretation set forth by Plaintiff does exactly this, as required by the Supreme Court.  *See Conn. Nat'l Bank* v. *Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."). Accordingly, Oberwetter's expressive dancing falls under the regulation's exemption.

## III.   Deferring to Defendants' Regulatory Interpretation Is Inappropriate Where That Interpretation Is Unconstitutional.

Despite the district court's valiant defense of the novel regulatory

interpretation advanced by Defendants, it is inappropriate to give "substantial deference" to agency interpretations that violate the Constitution.  The Supremacy Clause of the Constitution clearly dictates that where any law conflicts with the Constitution, the Constitution trumps.  U.S. CONST. art. VI, cl. 2.  Thus, where it has been established, as here,[4] that an agency's interpretation of its regulations violates the First Amendment, it is indefensible to erase the Constitution's protection of free expression based on an agency's intent.[5]  This Court should decline the district court's invitation to rubber stamp this unconstitutional regulation on the basis of the Park Service's regulatory intent or to approve its interpretation merely

---

[4] *See infra* part IV.

[5] Where, as here, one of a number of statutory interpretations can lead to constitutional difficulty, that interpretation should be discarded in favor of one that does not pose such a problem.  *See* NORMAN J. SINGER, 2A SUTHERLAND ON STATUTORY CONSTRUCTION § 45.11, at 87 (7th ed. 2008).  This idea is confirmed by the well-known principle that when a penal statute's meaning is unclear, it should be strictly construed against the government.  NORMAN J. SINGER, 3 SUTHERLAND ON STATUTORY CONSTRUCTION § 59:3, at 167-75 (7th ed. 2008) (collecting cases); *see also id.* at 187-88 (discussing the Supreme Court's adoption of the "rule of lenity.").  The Park Service's interpretation of the demonstration regulation as applied to expressive dancing is far from clear and should therefore be construed against the agency.

21

because that is how the agency chooses to enforce the regulation.  *See* JA 119-20 ("[The interpretation advanced by Defendants] accords with the agency's conclusion that section 7.96 bans all demonstrations at the Jefferson Memorial, which is evident from the National Park Service's application of the regulation to Oberwetter's conduct."); JA 122 n.3 ("Even if this Court were not convinced that the regulations definitively encompassed Oberwetter's conduct, the Park Service's conclusion that her expressive dancing falls within the regulatory definition is entitled to substantial deference.").

## IV.  Defendants' Application Of 36 C.F.R. § 7.96 To Oberwetter Violates Her First Amendment Rights.

Although Oberwetter's "demonstration" arrest was improper because the regulation did not apply to her conduct, were the regulation applied without the benefit of the exemption for which she qualifies, it would violate her First Amendment rights.  The court below fully acknowledged that Oberwetter's expressive dancing is protected speech under the First Amendment.  JA 122 n.4.  As such, the Park Service's prohibition of this speech must meet certain criteria, dependent upon the type of public property at issue, to be constitutional.

22

## A.   Oberwetter's Expression Occurred In A Traditional Public Forum.

The interior of the Jefferson Memorial, where free expression is prohibited by the Park Service, is a traditional public forum.  The Supreme Court has defined a traditional public forum as property that has as "a principal purpose ... the free exchange of ideas," *Cornelius* v. *NAACP Legal Def. & Ed. Fund, Inc.*, 473 U.S. 788, 800 (1985), which includes streets and parks, areas that have historically been used for "assembly, communicating thoughts between citizens, and discussing public questions." *Hague* v. *CIO*, 307 U.S. 496, 515 (1939).  In such a forum, restrictions on constitutionally protected speech must be narrowly tailored to fulfill a compelling state interest to survive scrutiny.  *Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (citation omitted).

Notwithstanding the district court's inaccurate characterization, the interior of the Jefferson Memorial is part of the national parkland dedicated to honoring President Jefferson.  See JA 124 ("Oberwetter's expressive conduct occurred in the *interior of the Jefferson Memorial*, *not* on the sidewalks or *parkland* surrounding it.") (emphasis added).

23

Indeed, Jefferson's statue is the very heart of that park, a traditional location for assembly and the free exchange of ideas.  As such, the Park Service's regulation must be narrowly drawn to be constitutional.  The regulation fails on this point, however, because, as interpreted by the Defendants', it covers more protected speech than is needed to advance the government's professed interest in "tranquility."  41 Fed. Reg. at 12,880; JA 126.[6]  As recognized by the district court, even a history professor giving an informative lecture to interested visitors would be prohibited from speaking.  JA 127.  However, this is not merely a "silly result," *id.*; it is an unconstitutional one.

### B.    Attempts To Place Oberwetter In A Non-Public Forum Are Misplaced And, Even If Successful, Do Not Constitutionalize Defendants' Misconduct.

---

[6] Although this Court has recognized that the Park Service may have a significant interest in the tranquility, safety, and convenience for its visitors, it has also held that placing permit requirements upon individuals and small groups in the public fora of national parks does not substantially further the government's interest and is thus unconstitutional.  *Boardley,* 2010 U.S. App. LEXIS 16302, at *24-32. No alternative avenues of communication exist for those wishing to engage in "an assembly, meeting, gathering, demonstration, or parade" in these areas, causing "virtually anyone engaging in any permitless expressive activity in a national park [to] risk[] a penalty."  *Id.* at *41-42.

24

The Defendants' attempts to classify the interior of the Memorial as nonpublic are unavailing, but ultimately result in the same finding of unconstitutionality.  A nonpublic forum is one "which [is] not by tradition or designation a forum for public communication." *Perry*, 460 U.S. at 46. Even in a nonpublic forum, "the State may [only] draw distinctions which relate to the special purpose for which the property is used," *id.* at 55, and the regulations must be both reasonable as related to this purpose and viewpoint neutral, *id.* at 46.

This Court has rejected attempts to carve out a nonpublic forum from areas historically recognized as traditional public forums.  For example, in *Lederman* v. *United States*, the Court refused to recognize the sidewalks along the east front of the U.S. Capitol building as a nonpublic enclave distinct from the Capitol grounds, which themselves have long been deemed to be a traditional public forum.  291 F.3d 36 (D.C. Cir. 2002).

The district court's attempt to distinguish the interior of the Memorial as a special nonpublic enclave fails.  The court places great emphasis on the fact that one must walk up some steps and past the

25

inner columns of the Memorial to reach the area closed to demonstrations, thus distinguishing it from the land surrounding it and therefore somehow rendering it less public or amenable to expression.  JA 124.  However, the very fact that the area surrounding Jefferson's statue is distinguishable from the surrounding land makes it more, not less, likely to be a traditional forum.  It is nearest Jefferson's statue that it is most clear one is in a national park; the further away one gets, the less clear the park's boundaries, and thus the public forum's borders, become.

And, although the district court correctly notes that the purpose of the Memorial is to recognize President Jefferson, *id.*, the Park Service has asserted an even more specific use for the property by permitting the annual celebration of Jefferson's birthday occur at the Memorial. 36 C.F.R. § 7.96(g)(3)(ii)(C).  Oberwetter and friends' Jeffersonian birthday celebration was thus entirely consistent with the Park Service's express purpose for the inner area of the Memorial. And as the Court has recently held, "[t]he protections of the First Amendment do not rise or fall depending on the characterization ascribed to a forum

26

by the government. ... The dispositive question is not what the forum is called, but what purpose it serves, either by tradition or specific designation." *Boardley*, 2010 U.S. App. LEXIS 16302, at *11.

It is neither reasonable nor viewpoint neutral to open the Memorial for this birthday celebration and then assert that only the government's "official" celebration is expression worthy of protection.[7]  And it is hardly reasonable to assert that celebrating a birthday in the officially designated location for such activity converts such conduct to a "demonstration" at the mere say so of the government.  Accordingly, the Park Service's regulation fails under any classification of the

---

[7] In fact, by opening the interior of the Memorial to this specific type of expressive activity, the Park Service has created a designated public forum in that area.  *See Perry*, 460 U.S. at 45 (defining a designated public forum as "public property which the State has opened for use by the public as a place for expressive activity").  Accordingly, the regulation at issue must meet the same scrutiny that is applied to a traditional public forum.  As detailed above, *supra* part IV.A, the regulation fails this test.  And even if, as the district court suggests, the 1976 regulation is merely a confirmation of pre-existing Park Service policy regarding expression at the Memorial, JA 99, the fact that the Park Service did not regulate expression related to Jefferson's birthday in the designated forum for longer than it has regulated such activity is decidedly relevant, JA 125.

27

forum.[8]

## V. Oberwetter's Arrest Violated Her First And Fourth Amendment Rights.

Officer Hilliard's arrest of Ms. Oberwetter was entirely unconstitutional given his lack of probable cause and his use of excessive force to take her into custody. Accordingly, she is entitled to relief on her *Bivens* claims, and qualified immunity does not attach.

### A. Hilliard Lacked Probable Cause to Arrest Oberwetter.

Given that Ms. Oberwetter's arrest was premised upon a regulation that at best violates her First Amendment rights and at worst is totally inapplicable to her, she is entitled to relief, particularly because she also could not have been arrested on the other ground of interference with an official duty. Defendant Hilliard thus lacked probable cause to effect the arrest and violated Oberwetter's Fourth Amendment rights.

The Constitution expressly guarantees that individuals cannot be arrested for a crime without the existence of probable cause that a crime was committed. U.S. CONST. amend. IV. As discussed *supra*, Ms.

---

[8] The Jefferson Memorial is also an appropriate place for Jefferson's critics to silently express their point of view.

28

Oberwetter had a First Amendment right to express herself through celebratory dance at the Jefferson Memorial.  And although the Park Service's demonstration prohibition is totally inapplicable to her expressive dance, even if it were applied, she is exempt from the regulation, a law that in Defendants' applied interpretation is unconstitutional.

### i. Oberwetter Did Not "Interfere With An Agency Function."

Additionally, the second asserted ground for arresting Oberwetter , interference with an agency function, 36 C.F.R. § 2.32(a)(1), (2), is inapplicable.  "Interference" under 36 C.F.R. § 2.32(a)(1) is defined as "[t]hreatening, resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty, or on account of the performance of an official duty."

Defendants have failed to provide any explanation as to which of the activities proscribed in subsection (a)(1) Oberwetter allegedly committed. Of course Oberwetter did none of these things. Even under Defendant Hilliard's version of events, Oberwetter never threatened, intimidated, or resisted him in any remote sense of those words. A

29

claim that Oberwetter "interfered" with the functioning of Hilliard's by asking him questions and asserting her constitutional rights is beyond the meaning of the term.

The definitive precedent on this point is *District of Columbia* v. *Little*, 339 U.S. 1 (1950). Little was convicted under a D.C. municipal ordinance for "interfering with or preventing any inspection" of a public health officer. Little refused to unlock her door for the inspector, and asserted she had a Fourth Amendment right to demand a warrant. The D.C. Circuit reversed, finding that a warrant was indeed required to gain entry into Little's home.

However, the Supreme Court declined to address the constitutional claims, affirming instead on statutory grounds. *Id.* at 3-4. "For even if the Health Officer had a lawful right to inspect the premises without a warrant, we are persuaded that respondent's statements to the officer were not an 'interference' that made her guilty of a misdemeanor under the controlling District law." *Id.* at 4.

> Although force or threatened force is not always an indispensable ingredient of the offense of interfering with an officer in the discharge of his duties, mere remonstrances or even criticisms of an officer are not usually held to be the equivalent of unlawful

30

> interference . . . The word "interfere" in this regulation cannot fairly
> be interpreted to encompass respondent's failure to unlock her door
> and her remonstrances on constitutional grounds.

*Id.* at 6-7. (footnote omitted).

Modern cases exploring the interference provision of Section
2.32(a)(1) are scarce, but instructive. "Interference" as used in the
analogous regulation governing Forest Service land, 36 C.F.R.
§ 261.3(a), was recently interpreted by the Ninth Circuit in *United
States* v. *Wilfong*, 274 F.3d 1297 (9th Cir. 2001). That court rejected
reliance on Little by a logger who continued to log trees on federal
lands in direct disobedience of a lawful order to cease the logging, and
even encouraged his crew to keep working as he was led away by
authorities. "[U]nlike Mrs. Little, Willfong was not asserting a
significant constitutional right or merely remonstrating or voicing
criticism." *Wilfong*, 274 F.3d at 1302. But this is exactly what
Oberwetter alleges occurred at the time of her arrest.

The Eighth Circuit has also expressed some concern about
interpreting "interference" to include protected First Amendment
activity. *See United States* v. *Bass*, 82 F.3d 811, 812 (8th Cir. 1996)

(noting that a charge under 2.32(a)(1) for a motorist's refusal to answer questions at a traffic stop caused the court to be "dubious about whether such a refusal would be an interference within the meaning of the regulation, or, if it were, whether the regulation could be constitutionally applied to such a refusal.").

Importantly, the lower court itself indicated doubts about the applicability of the interference regulation to Oberwetter's conduct.  JA 132 n.10 (noting the court's lack of confidence Oberwetter's arrest for interference was proper).  Refusing to speak as compelled, no less than speaking freely, does not constitute "interference" with a Park Service employee.

### ii.     Oberwetter Did Not Disobey A Lawful Order.

Neither did Oberwetter disobey a lawful order when asserting her constitutional rights.  To be charged under 36 C.F.R. § 2.32(a)(2), "an order ... must be 'lawful.' For an order to be lawful under the regulation, it must be 1) given in one of the circumstances outlined in section 2.32(a)(2) and 2) constitutional." *United States* v. *Goldin*, 311 F.3d 191, 194 (3d Cir. 2002).

32

At the time of her arrest, Oberwetter had ceased dancing and was merely standing inside the Jefferson Memorial, speaking with a police officer. Plainly, she had a constitutional right to be at the Memorial. But there is no need to reach the constitutional aspect of whether Defendant Hilliard's order to leave was "lawful" under Section 2.32(a)(2), because the order did not fall into any of the statutory criteria for lawfulness.

"[A] Park Ranger, under the regulation, may only give an order in a limited, rather narrow, set of circumstances." *Id.* at 196. These circumstances are:

> fire fighting operations, search and rescue operations, wildlife management operations involving animals that pose a threat to public safety, law enforcement actions, and emergency operations that involve a threat to public safety or park resources, or other activities where the control of public movement and activities is necessary to maintain order and public safety.

36 C.F.R. § 2.32(a)(2).

Plainly there were no fire fighting operations, search and rescue operations, wildlife management issues involving threatening animals, or emergency operations occurring at the time of the arrest. There was no "law enforcement action" apart from the order itself, as the

33

remainder of the crowd had dispersed and Plaintiff was not engaged in expressive dancing. That left only the "public movement" provision. But "an order given under the 'public movement' provision may only be given if 'necessary to maintain order and public safety,'" *Goldin*, 311 F.3d at 196 (citing Section 2.32(a)(2)), and regardless of what Defendant Hilliard might say about Plaintiff's activities at trial, the Complaint here alleges no conduct that is disorderly or threatening to public safety on Oberwetter's part.

Section 2.32(a)(2) is narrowly drawn to cover orders connected to a defined set of circumstances precisely so as to avoid sanctioning arbitrary orders based on an officer's whim.  Circular, self-validating logic cannot support an order under this sort of regulation. An order to move along, for the sake of moving along, is simply beyond the authorized scope of Section 2.32(a)(2).

### iii.   Hilliard Arrested Oberwetter In Retaliation For Questioning His Misconduct, In Clear Violation Of The First Amendment.

Defendants' lack of probable cause to arrest Ms. Oberwetter can only lead to the conclusion that Defendant Hilliard arrested her because he

disliked her expressive dance and her questioning of his commands.  As

the federal courts have suggested with varying degrees of clarity in

cases such as *Little*, *Wilfong*, *Bass*, and *Goldin*, the interference

regulation would be unconstitutional were it interpreted to include

questioning or failing to immediately comply with any "move along"

order.  Examining an ordinance making it "unlawful for any person to

stand or loiter upon any street or sidewalk . . . after having been

requested by any police officer to move on," the Supreme Court

remarked:

> Literally read . . . [the challenged] ordinance says that a person may
> stand on a public sidewalk in Birmingham only at the whim of any
> police officer of that city. The constitutional vice of so broad a
> provision needs no demonstration. It does not provide for
> government by clearly defined laws, but rather for government by
> the moment-to-moment opinions of a policeman on his beat. Instinct
> with its ever-present potential for arbitrarily suppressing First
> Amendment liberties, that kind of law bears the hallmark of a police
> state.

*Shuttlesworth* v. *City of Birmingham*, 382 U.S. 87, 90-91 (1965).

The ordinance in *Shuttlesworth* was saved only by a narrowing

construction restricting it to traffic control of obstructive behavior. No

such limitation saved a Houston ordinance making it "'unlawful for any

35

person to . . . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty,' and thereby prohibit[ing] verbal interruptions of police officers." *City of Houston* v. *Hill*, 482 U.S. 451, 461 (1987) (footnote and citation omitted).

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Id.* at 461. "The Constitution does not allow such speech to be made a crime. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-63.

Although Oberwetter was always civil in addressing Hilliard, she was civil by choice, consistent with her own values, and not out of any legal obligation. The Supreme Court has struck down, as barring protected First Amendment speech, an ordinance making it a crime "for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty." *Lewis* v. *City of New Orleans*, 415 U.S. 130, 131 (1974). Indeed, the police, by virtue of their

36

position, may be expected to tolerate a greater degree of verbal abuse than ordinary citizens. "[A] properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *Id.* at 135 (Powell, J., concurring) (citation omitted).

Simply put, the offense of "contempt of cop" does not exist under our Constitution. "[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Hill*, 482 U.S. at 465 (footnote omitted). To be sure, the police may arrest those who "fail to disperse in response to a *valid* police order." *Id.* at 463 n.11 (emphasis added).

But as the drafters of the Park Service interference regulation recognized, the dispersal order requires some indicia of validity beyond the officer's whim. For example, there is no duty to obey a sheriff's order to "move along" and disperse a sit-in protesting the segregation of a library. *Brown* v. *Louisiana*, 383 U.S. 131, 132 (1966). "Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement

37

inside frontiers that is a part of our heritage, or the right to move 'to whatsoever place one's own inclination may direct' identified in Blackstone's Commentaries."  *City of Chicago* v. *Morales*, 527 U.S. 41, 54 (1999) (citations omitted).

Even if Oberwetter's expressive dancing was constitutionally barred—which it was not—Oberwetter had long ceased dancing by the time of her arrest. She was merely asking questions of a police officer and asserting her rights, actions that are themselves protected by the First Amendment, simply standing where she had every absolute right to stand—in a public park. This is a dispute for a jury, properly instructed that Oberwetter's assertions, if credited, show that she was arrested unconstitutionally for questioning a police officer.

## B.    Hilliard Used Excessive Force To Arrest Oberwetter.

Once afforded the opportunity to discover and produce evidence, Oberwetter can readily show a factfinder that excessive force was used to take her into custody, in violation of her Fourth Amendment right to be free of such force.  To assess whether excessive force was employed, an objective inquiry must be made into "whether the officers' actions

38

are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham* v. *Connor*, 490 U.S. 386, 397 (1989). And "[b]ecause the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," a court must pay

> careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396 (citations and quotations omitted); *see also Wasserman* v. *Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009) (same).

Oberwetter alleged not only that Hilliard "used more force than was necessary" to arrest her, but also that he "shov[ed] her against a pillar" and "violently twist[ed] her arm" in the course of arresting her. JA 13, ¶ 21. This is sufficient to state a claim. Further discovery is needed to fully perform the fact-intensive inquiry demanded by the Fourth Amendment, including the specific manner in which she was shoved against a pillar and her arm was violently twisted.

39

The analysis already performed by the lower court on the basis of an incomplete record is flawed in its finding that excessive force was not used. *See generally* JA 132-35. Looking at the relevant *Graham* factors, the crime allegedly committed by Oberwetter was not severe. Whether it was Defendant Hilliard's quarrel with her expressive dance or her questioning of his orders, for which he claims interference and failure to follow a lawful order, none of these actions involve felonious, egregious, or violent behavior. This much was not disputed in the lower court. JA 53-54.

Further, there was no threat posed to Defendant Hilliard by Oberwetter and her group of friends. The group had already dispersed and Oberwetter was standing alone when approached by Hilliard. JA 12-13, ¶¶ 16-17. The lower court recognized that no threat existed under the circumstances, JA 133, and further development of the record will show that at the time of the arrest, a reasonable officer would not have concluded that this group posed a threat. Moreover, Oberwetter's refusal to follow an order because she was asserting her right to question the officer's actions in a peaceful, respectful manner

40

fails to rise to the level of resisting arrest or attempting to flee custody.

Although the district court relied heavily on *Wasserman* v. *Rodacker*, 557 F.3d 635 (D.C. Cir. 2009) to support its finding of no excessive force, that case is distinguishable. Unlike *Wasserman*, Oberwetter did not attempt to flee at any point. Further, the force involved was not a mere pressing upward on the arm to put on handcuffs, *id.* at 636; rather, Oberwetter was shoved into a stone pillar face first—the only direction in which she could have been shoved for Defendant Hilliard to secure the handcuffs—in such a violent fashion that it broke her earbud. Such force is not reasonable to detain a nonviolent individual who neither poses a threat nor is attempting to flee.

Every case Hilliard cites was decided on the basis of a developed record and is thus inappropriate to compare to this case, decided on a motion to dismiss. *See Wardlaw* v. *Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993) (summary judgment); *Saucier* v. *Katz*, 533 U.S. 194, 199 (2001) (same); *Wasserman*, 557 F.3d at 637 (same); *Rogala* v. *District of Columbia*, 161 F.3d 44, 46 (D.C. Cir. 1998) (judgment after a five-day bench trial).

41

Finally, the emphasis placed upon the absence of a specific alleged physical injury is not dispositive of the reasonableness inquiry.  *See, e.g.*, JA 134.  Beyond being dicta, *see Wasserman*, 557 F.3d at 641 (citation omitted), using this standard as definitive would allow an officer to escape liability for any amount of force so long as the victim manages to evade permanent injury.

> **C.    Hilliard Lacks Qualified Immunity, As It Has Long Been Well-Established That Police May Not Arrest Individuals Without Probable Cause, Using Excessive Force, And In Retaliation For Asking Questions.**

The actions taken by defendant in effecting Oberwetter's arrest do not escape liability through the defense of qualified immunity.  To assert qualified immunity, one must show "[his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson* v. *Callahan*, 129 S. Ct. 808, 815 (2009) (citations and quotations omitted).

Freedom from arrest without probable cause is express in the Constitution and thus clearly established to put any reasonable person on notice that a violation of this right is unconstitutional.

Oberwetter's asserted First Amendment rights were also clearly

42

established at the time of her arrest.  The right to question a police officer has not been considered interference with an arrest since the Supreme Court's 1950 decision in *District of Columbia* v. *Little,* 339 U.S. 1.  And arresting someone in retaliation for speech an officer does not like has been prohibited for some time as well.  *City of Houston* v. *Hill*, 482 U.S. 451 (1987).  Further, in this Circuit, the police are well aware that arresting people lawfully exercising their First Amendment rights carries liability.  *Barham* v. *Ramsey*, 434 F.3d 565, 572-73 (D.C. Cir. 2006).

And as to the expressive dancing, that Officer Hilliard may not have been acquainted with "the fine points of First Amendment law" regarding this activity is irrelevant.  *Id.* at 572-73.  Rejecting qualified immunity in a Fourth Amendment case implicating First Amendment rights, one court has held:

> The fact that this is a Fourth Amendment case and not a First Amendment case does not diminish the First Amendment protections available to the plaintiffs. What value would the First Amendment carry if its demonstrators could be dispersed or intimidated by police brutality or unnecessary force? Qualified immunity is not widely available in an area so closely touching our most precious freedoms.

43

*Lamb* v. *City of Decatur*, 947 F. Supp. 1261, 1264 (C.D. Ill.1996) (citations omitted).[9]

The lower court mistakenly relied on *Wardlaw* v. *Pickett*, 1 F.3d 1297 (D.C. Cir. 1993) for the proposition that police officers "are entitled to qualified immunity even if they reasonably but mistakenly concluded that probable cause [to arrest] existed." 1 F.3d at 1304 (internal quotations and citations omitted); JA 131 n.9. While this principle is certainly true in the abstract, its attempted application here is misplaced. *Wardlaw* dealt with the case of an officer who reasonably (though mistakenly) believed he was being assaulted, supplying the officer probable cause to arrest the man for the existing crime of assault. But Plaintiff's case does not concern an officer's mistaken belief that a person is committing acts that would, if occurring, violate an existing law or regulation. Rather, there is simply no regulation here that proscribes Oberwetter's conduct. And probable cause certainly cannot be premised on a nonexistent crime.

---

[9]  It does not matter whether a *Bivens* claim is available for a pure First Amendment violation. A *Bivens* claim is plainly available for a Fourth Amendment violation, including for arrests that are wrongful because they interfere with First Amendment rights.

44

Likewise, reliance upon *Michigan* v. *DeFillippo*, 443 U.S. 31, 37 (1979) for the proposition that probable cause to arrest may be premised on a regulation later determined to be invalid is also misplaced.  An arrestee's conduct must fall within the scope of some law or regulation—valid or otherwise—to generate probable cause.  As determined above, none of Oberwetter's actions fell within the Park Service regulations cited.

Finally, Oberwetter's Fourth Amendment right to be arrested without the threat of excessive force is also clearly established.  This Court's precedent notes that the "objective reasonableness" inquiry "provides the test for evaluating both the scope of the officer's qualified immunity as well as the plaintiff's claim of excessive force under the fourth amendment." *Wardlaw*, 1 F.3d at 1303.  As previously discussed, no reasonable officer in the specific situation Defendant Hilliard found himself in would have applied the degree and scope of force to Ms. Oberwetter that he used.  Because Hilliard's actions fail the reasonableness test, qualified immunity cannot attach.

Consequently, Defendants defense of qualified immunity cannot

45

survive, and Ms. Oberwetter must be permitted to pursue her *Bivens* claims for First and Fourth Amendment violations.

## CONCLUSION

Mary Brooke Oberwetter is fully protected by the First Amendment to engage in expressive dancing celebrating the birth of President Thomas Jefferson in a national park honoring his life and legacy. The Park Service's regulations do not contemplate a restriction on this type of expressive activity and thus cannot be used as grounds for arrest.

Further, Oberwetter is constitutionally secure in her right to challenge the commands of a law enforcement officer, and her exercise of this right also may not be punished by arrest.

Because Defendant Hilliard arrested Oberwetter on charges relating to the exercise of both rights, he lacked probable cause to effect the arrest. Further, Oberwetter's peaceful conduct provided no grounds for the excessive force applied by Hilliard, resulting in harm to Oberwetter's person and property. In such a case, qualified immunity is inapplicable.

Accordingly, Plaintiff is entitled to pursue declaratory and injunctive

relief against the Park Service for its interpretation and enforcement of its regulations as applied to expressive dance.  She is also entitled to pursue her *Bivens* claims against Defendant Hilliard for effecting her arrest without probable cause and with the use of excessive force in violation of her First and Fourth Amendment rights.  This Court should remand this case to the district court for further proceedings.

Dated:   September 16, 2010                Respectfully submitted,

Alan Gura
Candice N. Hance
GURA & POSSESSKY, PLLC
101 N. Columbus Street
Suite 405
Alexandria, VA 22314
703.835.9085/703.997.7665


By:   /s/ Candice N. Hance

Candice N. Hance

*Counsel for Plaintiff-Appellant*

47

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 8,801 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32(a)(1).

This brief complies with the typeface requirements of Federal Rule of  Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Corel WordPerfect X4 in 14-point Century Schoolbook font.

/s/ Candice N. Hance

Candice N. Hance

*Counsel for Plaintiff-Appellant*

Dated: September 16, 2010

# CERTIFICATE OF SERVICE

I certify that, on this, the 16th day of September, 2010, I filed the foregoing Appellant's Brief electronically with the Clerk of the Court using the CM/ECF System.  On September 16, 2010, I also served a copy of the foregoing Appellant's Brief upon the following by electronic service.  The document was filed electronically, generating a Notice of Electronic Filing, and counsel below has consented to electronic filing:

Harry B. Roback
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 616-5309

I further certify that on September 16, 2010, I served an electronic courtesy copy of Appellant's Brief on above-listed counsel by e-mail to harry.roback@usdoj.gov.

This brief will also be filed September 17, 2010, by dispatch to the Clerk via Federal Express.  Two true and correct copies of the Appellant's Brief also will be served on above-listed counsel by Federal Express on September 17, 2010.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this, the 16th day of September, 2010.

/s/ Candice N. Hance

Candice N. Hance

*Counsel for Plaintiff-Appellant*

## STATUTORY ADDENDUM
## TABLE OF CONTENTS

36 C.F.R. § 2.32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SA-2

36 C.F.R. § 7.96(g)(1)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SA-3

36 C.F.R. § 7.96(g)(2)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SA-4

36 C.F.R. § 7.96(g)(3)(ii)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . SA-5

**36 C.F.R. § 2.32 states:**

§ 2.32 Interfering with agency functions.

  (a) The following are prohibited:

    (1) Interference. Threatening, resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty, or on account of the performance of an official duty.

    (2) Lawful order. Violating the lawful order of a government employee or agent authorized to maintain order and control public access and movement during fire fighting operations, search and rescue operations, wildlife management operations involving animals that pose a threat to public safety, law enforcement actions, and emergency operations that involve a threat to public safety or park resources, or other activities where the control of public movement and activities is necessary to maintain order and public safety.

    (3) False information. Knowingly giving a false or fictitious report or other false information: (i) To an authorized person investigating an accident or violation of law or regulation or; (ii) on an application for a permit.

    (4) False Report. Knowingly giving a false report for the purpose of misleading a government employee or agent in the conduct of official duties, or making a false report that causes a response by the United States to a fictitious event.

  (b) The regulations contained in this section apply, regardless of land ownership, on all lands and waters within a park area that are under the legislative jurisdiction of the United States.

SA-2

**36 C.F.R. § 7.96(g)(1)(i) states:**

(g) Demonstrations and special events

(1) Definitions.

(i) The term "demonstrations" includes demonstrations, picketing, speechmaking, marching, holding vigils or religious services and all other like forms of conduct which involve the communication or expression of views or grievances, engaged in by one or more persons, the conduct of which has the effect, intent or propensity to draw a crowd or onlookers. This term does not include casual park use by visitors or tourists which does not have an intent or propensity to attract a crowd or onlookers.

**36 C.F.R. § 7.96(g)(2)(i) states:**

(g) Demonstrations and special events

(2) Permit requirements. Demonstrations and special events may be held only pursuant to a permit issued in accordance with the provisions of this section except:

(i) Demonstrations involving 25 persons or fewer may be held without a permit provided that the other conditions required for the issuance of a permit are met and provided further that the group is not merely an extension of another group already availing itself of the 25-person maximum under this provision or will not unreasonably interfere with other demonstrations or special events.

**36 C.F.R. § 7.96(g)(3)(ii)(C) states:**

(g) Demonstrations and special events.

(3) Permit applications.

(ii) Other park areas. No permits may be issued authorizing demonstrations or special events in the following other park areas:

(C) The Jefferson Memorial, which means the circular portion of the Jefferson Memorial enclosed by the outermost series of columns, and all portions on the same levels or above the base of these columns, except for the official annual commemorative Jefferson birthday ceremony.